140 So.2d 546 (1962)
Willard SINGLEY, Plaintiff-Appellee,
v.
Lennie Duncan SINGLEY, Defendant-Appellant.
No. 5508.
Court of Appeal of Louisiana, First Circuit.
March 14, 1962.
Rehearing Denied April 23, 1962.
Dan W. Graves, Jr., Bogalusa, for appellant.
Donald H. Lee, Bogalusa, for appellee.
Before ELLIS, HERGET, and MILLER, JJ.
*547 ELLIS, Judge.
On October 14, 1960 plaintiff filed suit against the defendant, from whom he was legally separated on November 20, 1959 in which he prayed for a judgment declaring an infant child born to the defendant on or about September 15, 1960, named Barbara Fay Singley, he declared and adjudged not to be the child of plaintiff. Plaintiff also prayed that a tutor ad hoc and an attorney should be appointed to represent the said child, which was done by order of the District Court on the 13th day of October, 1960.
The case was duly tried and judgment rendered in favor of the plaintiff, decreeing the infant child, viz., Barbara Fay Singley "be and she is hereby disavowed by plaintiff, Willard Singley, and that she is hereby pronounced illegitimate and not born issue of the union between plaintiff, Willard Singley, and defendant, Lennie Duncan Singley, and further she is expressly renounced as a child and forced heir of plaintiff, Willard Singley, and it is further declared and adjudged that said infant child is not the child of petitioner, Willard Singley."
An order for a devolutive appeal was granted defendant and the attorney and tutor ad hoc and duly perfected to this court.
Plaintiff and defendant were married on January 17th, 1947 in Tylertown, Walthall County, Mississippi and six children were born issue of this marriage. On September 18th, 1959 the defendant herein filed suit for separation "a mensa et thoro" which finally resulted in a judgment in favor of the plaintiff, defendant herein, and against the defendant, plaintiff herein, decreeing a separation between them and dissolving the community of acquets and gains formerly existing between the parties, which judgment was rendered, read and signed on the 20th day of November, 1959.
On September 15, 1960, three hundred days after the date of the judicial separation, a child was born to Lennie Duncan Singley, defendant herein, which was known as Barbara Fay Singley.
On October 13, 1960, within thirty days after the birth of this child, the plaintiff herein filed this suit to disavow the paternity of Barbara Fay Singley, and on March 17, 1961 plaintiff filed suit against the defendant for a final divorce on grounds of living separate and apart for a period of more than one year and sixty days after judgment of the judicial separation. The suits were consolidated for trial and resulted in the judgment for the plaintiff in each suit.
The Articles of the Civil Code applicable to the questions before the court are as follows:
LSA-C.C. Art. 186. "The child capable of living, which is born before the one hundred and eightieth day after the marriage, is not presumed to be the child of the husband; every child born alive more than six months after conception, is presumed to be capable of living."
LSA-C.C. Art. 187. "The same rule applies with respect to the child born three hundred days after the dissolution of the marriage, or after the sentence of separation from bed and board."
LSA-C.C. Art. 188. "The legitimacy of the child born three hundred days after the separation from bed and board has been decreed, may be contested, unless it be proved that there had been cohabitation between the husband and wife since such decree, because it is always presumed that the parties have obeyed the sentence of separation. But in case of voluntary separation, cohabitation is always presumed, unless the contrary be proved."
LSA-C.C. Art. 191. "In all the cases above enumerated, where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of *548 the child, must do it within one month, if he be in the place where the child is born, or within two months after his return, if he be absent at that time, or within two months after the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making any objection to the legitimacy of such child."
Under the facts the child was born three hundred days after the separation from bed and board had been decreed. Under Article 188 it could be contested and "unless it be proved that there had been cohabitation between the husband and wife since such decree" and if the suit has been filed within one month after the birth of the child, which was done in this case, the father is entitled to a judgment.
The question, therefore, before the court is one of fact as to whether it has been proved that there has been cohabitation between the plaintiff and the defendant since the decree.
This is the first case which has reached an appellate court which has its cause of action based solely upon LSA-C.C. Articles 187 and 188. LSA-C.C. Art. 186 and 187 are exceptions to LSA-C.C. Article 184 which states: "The law considers the husband of the mother as the father of all children conceived during the marriage." Under Articles 186 and 187 a child born "before the one hundred and eightieth day after the marriage" and one "born three hundred days after the dissolution of the marriage, or after the sentence of separation from bed and board * * * is not presumed to be the child of the husband."
There are numerous cases decided by the appellate courts of Louisiana involving causes of action based on the other articles of the Civil Code contained in Chapter II, "OF LEGITIMATE CHILDREN" and in Articles 184 through 192.
While the Articles, supra, governing the cause of action under consideration are apparently couched in simple language, and although we do not have the benefit of any prior jurisprudence in the appellate courts of this State, we do have excellent law review articles which discuss not only the articles of the Code, 186, 187 and 188, with which we are concerned, but all other articles under the Chapter II, Section 1 of our Civil Code beginning with Article 184 and ending with Article 192.
In Louisiana Law Review, Volume XIII, page 587, is an excellent article entitled "PRESUMPTION OF LEGITIMACY AND THE `ACTION EN DESAVEU'"[*] by Harold J. Brouillette. On Page 589 is the following:
"Art. 188. The legitimacy of the child born three hundred days after the separation from bed and board has been decreed, may be contested, unless it be proved that there had been cohabitation between the husband and wife since such decree, because it is always presumed that the parties have obeyed the sentence of separation.
* * * * * *
"Turning now to an analysis of the plan of Articles 184-192 it can be shown that the matter of legitimacy is approached in terms of the paternity of a child either conceived by or born of a woman while married. For the first case, that of a child conceived during a marriage, Article 184 establishes the basic presumption that the husband of the mother is the father of the child conceived by her. The date of conception is thus important, and yet because it is so difficult to ascertain, Articles 186 and 187 establish presumptions and non-presumptions of conception during marriage. Actually the articles are worded in terms of presumptions of paternity in the husband, but the criteria are the dates of marriage, birth, separation from bed and board, and dissolution of marriage. Yet the child conceived during marriage is not necessarily *549 conceived by the husband of the mother; hence, Articles 185, 187 and 189 name the few specific situations in which the presumption of paternity in the husband ceases, though the child is admittedly conceived during the marriage. The second case, that of a child born during marriage, though presumably conceived before the marriage, is dealt with in Articles 186 and 190. These articles, like those discussed above, prescribe rules in terms of presumptions and non-presumptions of paternity in the husband. Finally, Articles 191 and 192 give the husband of the mother, or in the case of his death, his heirs, the right to bring an action to disavow the child whenever the presumption of paternity ceases and give them certain delays in which to exercise this right. This action is known to civilians as the action en desaveu.
"From the above analysis three important conclusions follow:
"(1) Articles 184-192 have no application unless the child is born or conceived of a married woman.
"(2) When a child is born or conceived of a married woman, only the husband or his heirs may bring the action of disavowal.
"(3) If they do not bring the action within the time allowed, they will not be permitted to do so at all, and the child will be considered that of the husband of the mother.
"The plan of the articles having been explained, their provisions may be examined to determine exactly in what instances they do or do not presume the husband to be the father.
* * * * * *
"The Child Born 300 or More Days After Separation from Bed and Board.
"Article 187, by referring to Article 186, says that the non-presumption of paternity in the husband of the mother `applies with respect to the child born 300 days * * * after the sentence of separation from bed and board'; but the husband's right to bring the action in this case is denied him by Article 188 if it is shown that he has cohabited with his wife since the judgment of separation. That article explains why the presumption of paternity ceases when a child is born 300 or more days after judicial separation; it is `because it is always presumed that he parties having obeyed the sentence of separation.' While possibly desirable for the sake of explanation, the clause is not necessary to the article. Nor was it necessary to provide in the last sentence that cohabitation is always presumed in the case of voluntary separation.
* * * * * *
"Having examined the plan of Articles 184-192 and discussed their content in detail, it is now possible to restate them in such a manner as better to expound their approach to the subject without altering their substance in any way.
* * * * * *
"Article C. There is cause for disavowal if the child is born 300 or more days after a judgment of separation from bed and board unless it is proved that the husband and wife cohabited after such judgment."
In Louisiana Law Review, Volume XIV, at page 401, we find the beginning of the second article by Harold J. Brouillette on the same subject matter:

"III. A Survey of the Louisiana Jurisprudence
"The jurisprudence of this state relating to the presumption of legitimacy and the `action en desaveu' involves two major problems and one incidental one. The greater number of decisions concerns the question of who may contest the status of a person born of a married woman. The second major difficulty is what must be proved by one who attacks another's status. A third and incidental problem concerns the application of Article 191 of the [LSA-] Civil Code relating to the time *550 within which the action en desaveu must be brought.
"Who May Contest LegitimacyThe Exclusiveness of the Action En Desaveu.
"Article 191 states clearly that only the husband of the mother or in certain cases his heirs may bring the action of disavowal. Under the jurisprudence, it is the only way in which the legitimacy of a child born or conceived of a married woman may be contested. It follows that under this interpretation, persons other than the husband or his heirs may contest legitimacy only by proving the child was not born or conceived of a married woman. Thus, the French solution, based on an article similar to Article 197 of the [LSA-] Louisiana Civil Code, to the effect that anyone may prove another's illegitimacy if that person had not enjoyed the reputation of being a legitimate child, though he be shown to be the child of a married woman, is not followed in Louisiana.1 In this section of the Comment the jurisprudence on this question will be analyzed.
* * * * * *
"Causes For Disavowal
"A search of the jurisprudence of Louisiana fails to reveal a successful attack on the status of a person born of a married woman. There are only four cases involving an actual action en desaveu as contemplated by the Civil Codethat is, only four cases in which the prescribed delays and in none of these was the action successful.14 Most of the jurisprudence in which the grounds for disavowal are discussed is made up of cases in which the status of a person was contested by someone other than the husband of the mother or his heirs. As has been said, the court in all instances except one15 disposed of these allegations of illegitimacy by stating that only the husband of the mother, or in certain cases his heirs, may contest legitimacy. The result is that there are many pages of dicta, and these dicta have been looked to by the court in deciding the four cases in which the action was properly instituted. This jurisprudence will be examined under the headings corresponding to the causes for disavowal listed in the Civil Code.
"In Part I of this Comment it was shown that there are five instances in which the husband of the mother may disavow her child: (1) When the child is born less than 180 days after marriage, (2) when the child is born 300 or more days after dissolution of the marriage,16 (3) when the child is born 300 or more days after separation from bed and board, (4) when the wife has committed adultery and has concealed the birth of the child from her husband, and (5) when it was physically impossible for the husband to be the father because of his remoteness from the mother.
"There is no jurisprudence in which grounds (1) or (2) above, have been alleged.
"(3) Child born 300 or more days after separation from bed and board. Article 187, by referring to Article 186, says that the nonpresumption of paternity in the husband of the mother `applies with respect to the child born three hundred days * * * after the sentence of separation from bed and board.' In McNeely v. McNeely,17 the plaintiff attacked the validity of a will naming the defendant as universal legatee; further, plaintiff alleged that even if the will was valid, the legacy was subject to reduction because he was the legitimate child of the deceased and thus entitled to the forced portion of his father's succession. By way of defense, the universal legatee attacked the status of the plaintiff showing that he was born more than three hundred days after a declaration of separation from bed and board between his parents. However, it was shown by the plaintiff that the decedent had never contested his legitimacy. The Court held the will to be valid, but reduced the legacy to the two-third disposable portion, declaring that the universal legatee was without legal right *551 to contest the status of the plaintiff as that right belongs exclusively to the husband of his mother. Under the facts proved, it seems clear that had the action been brought by the decedent and within the delay period prescribed by the Civil Code it would have been successful. However, it should be remembered that under such facts, the wife may attempt to prove that there was cohabitation after the decree of separation and if successful in such attempt, the action en desaveu fails.18 Birth of the child three hundred or more days after separation from bed and board was not grounds in any of the four actions en desaveu.
"1. See Comment, 13 Louisiana Law Review 587, 597 (1953).
"14. Kuhlman v. Kuhlman, 137 La. 263, 68 So. 604 (1915); Switzer v. Switzer, 170 La. 550, 128 So. 477 (1930); LeJeune v. LeJeune, 184 La. 837, 167 So. 747 (1936); Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952).
"15. In Tate v. Penne, 7 Mart.,(N.S.), 548 (La.1829) the decision was based on other grounds as related at p. 402 supra.
"16. The peculiarities of this situation are discussed in Part I of this Comment, 13 Louisiana Law Review, 587, 591-592 (1953).
"17. 47 La.Ann. 1321, 17 So. 928 (1895).
"18. Art. 188, La.Civil Code of 1870."
Again in Louisiana Law Review, Vol. XIV, "WORK OF THE SUPREME COURT" at page 123 we find an article by Dr. Robert A. Pascal, Associate Professor of Law, Louisiana State University, pertaining to a discussion of cases on the disavowal of paternity, is the following statement:
"* * * The fact is that the husband did initiate an action to disavow the child, and with cause, for in instances of the birth of a child three hundred or more days following a voluntary separation the husband may disavow paternity simply by proving that he and his wife had not cohabited at any time of possible conception. While preparing these remarks it occurred to the writer for the first time that this is the meaning of [LSA-]Civil Code Article 188, paragraph two, if it is to be given any effect at all. This paragraph states that `in case of voluntary separation, cohabitation is always presumed, unless the contrary be proved.' Why prove non-cohabitation if this has no bearing on the right to disavow? Unless this paragraph means that non-cohabitation during a period of voluntary separation is a cause for disavowal it means nothing.
"The correctness of this interpretation can be demonstrated easily in the context of the whole Article 188. The first paragraph states that `The legitimacy of the child born three hundred days after separation from bed and board * * * may be contested, unless it be proved that there had been cohabitation between the husband and wife. * * *' The second paragraph adds `But in case of voluntary separation, cohabitation is always presumed, unless the contrary be proved.' Thus the import of the whole article must be as if it read as follows:
"The child born three hundred days after either a separation from bed and board or a separation in fact may be contested.
"If the separation be one from bed and board, that in itself is cause for disavowal unless it be proved that there has been cohabitation between the spouses.
"But if the separation be voluntary, then the husband must prove there has not been any cohabitation between the spouses."
The tutor ad hoc and also counsel for the minor and counsel for the defendant in brief have cited the case of State v. Freddy, 117 La. 121, 41 So. 436, a criminal case, in which the defendant had been convicted of incest under the definition of Act No. 78 *552 of 1884, page 101, and which read as follows:
"An Act to define the crime of incest and provide for the punishment thereof.
"Whoever shall hereafter knowingly intermarry or cohabit without marriage, being within the degrees of consanguinity within which marriage is prohibited by Articles 94 and 95 of the Revised Civil Code of the State of Louisiana, shall be deemed guilty of the crime of incest."
After summarizing the Argument of counsel for defendant on the question of whether the word "cohabit" as used in the statute implied, or not, the concurrent will of the parties, the Court stated:
"From this, the learned counsel deduce the conclusion that sexual intercourse is not essential to incest; but that the crime is committed by the parties if, without any act of sexual intercourse, they merely hold themselves out to the world as living together as husband and wife.
"We are not impressed by this argument. The etymological meaning of the word `co-habit' is simply `to dwell together.' The acquired meaning varies, necessarily, with the connection in which the word is used. In the present statute, we think the meaning is simply that of sexual intercourse, as in our laws upon marriage and legitimacy. The statute and these laws may be said to be kindred legislation; the statute merely, as it were, adding the sanction of punishment to the prohibitions contained in these laws against the union of persons within the prohibited degrees of relationship.
"When the statute makes use of the expression `shall intermarry, or cohabit without marriage,' it uses the word cohabit in the same sense as to the articles 188 and 189, Rev.Civ.Code, when they speak of the possibility of the husband's `cohabiting' with his wife. These articles do not use the word in the sense of the possibility of the husband's `dwelling with his wife,' or of the possibility of his `holding her out to the world as his wife,' but simply of the possibility of his having access to her. Tate v. Penne, 7 Mart.(N.S.) 548-555."
By way of explanation, the Tate case was one in which there had been a voluntary separation and not a judicial separation as in the case at bar. Also prior to the Code of 1825, Article 10 of the Civil Code of 1808 read:
"The legitimacy of a child born three hundred days after the separation from bed and board, has been decreed, may be contested, unless it be proved that access has taken place between the husband and wife, since such decree, because it is always presumed that the parties have obeyed the sentence of separation.
"But in case of voluntary separation, access is always presumed unless the contrary be proved."
We therefore conclude from the law above discussed and cited that the child born three hundred days after the judicial separation from bed and board has been decreed is not presumed to be the child of the husband, as it is always presumed that the parties have obeyed the sentence of separation and the legitimacy of such child may be contested and successfully so "unless it be proved that there had been cohabitation between the husband and wife since such decree."
In the present case the wife and mother of the minor, Barbara Fay Singley, was not summoned, did not appear at the trial nor testify at same although she filed an answer through the same attorney who represented her in the suit for separation from bed and board, in which she denied the allegation of the plaintiff that there had been no reconciliation, cohabitation, association, sexual relations or any relations usually engaged in by married persons since the date of the separation, and the article in which plaintiff alleged a denial "that he is the *553 father of said child" and prayed that the demand of the plaintiff be rejected. Neither did the defendant wife offer any testimony by any other witness on the trial of the case.
The plaintiff proved by the judgment of separation and the birth certificate of the child that three hundred days had elapsed after the date of the judgment of separation to the date of the birth of the child, and his suit was filed within the period fixed by law. He also testified that there had been no reconcilation, that he had had no relations of any kind with his wife and, as a matter of fact, there is no testimony that he ever saw her after the judgment of separation, however, he testified that he paid $140.00 per month alimony as agreed upon and subsequently made a part of the judgment of separation. He was given visitation rights as to his children which were placed in the custody of his wife, although there is no specific testimony that he visited them at the home of the wife other than indirectly by questions propounded to other witnesses who testified in his behalf as to whether they could say he had not had sexual relations with his wife when he went to visit his children and, of course, their answer could only be in the negative. One of the witnesses who testified on behalf of the plaintiff was his brother who lived with him and who stated that (within his knowledge) there had been no reconciliation whatsoever between the plaintiff and the defendant or any relations between them. This brother had lived in the house with the plaintiff since November 20th, 1959 and while he stayed with his brother he frankly and truthfully stated that his brother worked some nights at Gaylord and he did not know what he did every night, and that it could be possible that he could have gone to see his wife on one of the nights when he was off. However, there is no proof in the record that the plaintiff had ever done that.
The other witness on behalf of plaintiff testified that he knew both plaintiff and his wife, defendant herein; that he saw the plaintiff almost every day as he rode back and forth to work with him and lived close to him. He was asked if, from his own personal knowledge, he knew whether or not plaintiff and his wife had become reconciled since the date of the separation and he stated: "They have not." On cross examination he admitted, however, that he was not with the plaintiff all the time and it was possible he could have seen his wife after the separation and he would not have known about it and that he did not know what he did when he went up to see his children as he had not gone with him.
It is the contention of counsel for the child that plaintiff had not borne the burden of proof by a preponderance of the evidence. It is, of course, clear under the law and jurisprudence that if this cause of action was based upon Articles 187 and 188 of the LSA-Civil Code, which it is, that having been a voluntary separation, the proof would be totally insufficient as cohabitation is always presumed "unless the contrary be proved." Also, if based upon Article 189, the proof would be insufficient as it is clearly not shown that cohabitation was physically impossible. However, if we are correct in holding that Barbara Fay Singley is not presumed to be the child of the plaintiff as she was born 300 days after the separation from bed and board had been decreed that the plaintiff had the right to protest her paternity and "unless it be proved that there had been cohabitation between the husband and wife since such decree" the plaintiff is entitled to judgment. The mere fact that the father, who was given visitation rights in the judgment of separation, exercised those rights and visited his children in the home of the wife, would not destroy the presumption of the illegitimacy of the child born 300 days after the separation from bed and board and create a presumption of cohabitation without proof as this would be in the teeth of the law as set forth in Articles 187 and 188 of the LSA-Civil Code. There must be proof of cohabitation between the husband and wife *554 since the decree of separation from bed and board in order to destroy the presumption and deny the husband a judgment in a suit to contest the paternity of the child born 300 days after the separation from bed and board. There is not one iota of proof offered in this record to show cohabitation between the plaintiff and the defendant wife since the decree of separation from bed and board, and, on the contrary, the only evidence is to the effect that there has been no cohabitation between them since the decree of separation.
For the above and foregoing reasons the judgment of the Lower Court is correct and is hereby affirmed.
Affirmed.
NOTES
[*] Note 1.