210 So.2d 388 (1968)
James FELTUS, III,
v.
Charlene BLAND, divorced wife of James FELTUS, III, and Rodney Christopher Feltus.
No. 3010.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1968.
Connolly, Connolly & Labranche, Frans J. Labranche, Jr., New Orleans, for plaintiffappellee.
Fiasconaro, Heisler, Windhorst & Delaup, Richard L. Bodet and Cahn & Provensal, Edmond H. Fitzmaurice, Jr., New Orleans, for defendants-appellants.
Before REGAN, HALL and JOHNSON, JJ.
HALL, Judge.
Plaintiff filed this suit on April 21, 1966 against his divorced wife, Charlene Bland, seeking to disavow the paternity of a child born to Charlene Bland on June 6, 1965 during plaintiff's marriage to her. Mr. E. H. Fitzmaurice, Jr., an attorney at law, was appointed by the Court to represent the minor child. Mr. Fitzmaurice and counsel for the child's mother jointly filed exceptions of no right or cause of action to plaintiff's petition, which were overruled, and an exception or plea of prescription, which was referred to the merits. Thereafter they filed a joint answer consisting of a general denial and a reliance upon the presumption of paternity set forth in LSA-C.C. Art. 184 and coupled with their answer a reconventional demand for the child's support. On a rule brought against plaintiff, alimony for the support of the child during the pendency of the suit was fixed at $10.00 per week.
Following trial on the merits judgment was rendered in plaintiff's favor decreeing that "the child born to Charlene Bland on June 6, 1965 is not the child of petitioner." That the Trial Judge overruled the exception of prescription and also denied the reconventional demand is implicit in the judgment rendered. Defendants appealed by joint motion.
The issues presented are:
a) Whether plaintiff has overcome the presumption of paternity set forth in LSA-C.C. Art. 184 by satisfactory proof of "remoteness" as provided in LSA-C.C. Art. 189, and
*389 b) Whether plaintiff's suit is prescribed by virtue of the provisions of LSA-C.C. Art. 191.

(a)
LSA-C.C. Arts. 184 and 189 read as follows:
"Art. 184. The law considers the husband of the mother as the father of all children conceived during the marriage."
"Art. 189. The presumption of paternity as an incident to the marriage is also at an end, when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."
The following facts are established by the record:
Plaintiff enlisted in the United States Navy on December 21, 1962 and after three months boot training was assigned to duty on the USS Constellation. He remained on the same duty station until his discharge from the navy on December 16, 1966. Plaintiff obtained a leave of absence from the ship from December 28, 1963, until January 17, 1964 during which time he came to New Orleans and saw his wife. His next leave was in April 1965. Plaintiff did not see his wife from January 1964 until April 1965.
On May 5, 1964 the USS Constellation left the territorial waters of the United States for combat duty in the Vietnam area and did not return to the United States until February 1, 1965. Plaintiff was on duty aboard ship the entire time. While in the far east the ship made port from time to time at Pearl Harbor, Subic Bay, Hong Kong and Yokusuka. The time spent in port varied from two or three days to seven or eight days. During these times in port the crew had shore liberty but no one was allowed to leave the ship for longer than twelve hours at a time. Plaintiff was never AWOL during his entire four years in the Navy.
After the Constellation's return to the United States plaintiff obtained a leave of absence from April 7, 1965 until May 8, 1965. He returned to New Orleans on May 8, 1965 and found that his wife was five to seven months pregnant. He immediately secured counsel and filed suit for divorce against her on the ground of adultery. He secured an extension of his leave and remained in New Orleans until May 18, 1965 in an attempt to get his divorce suit tried but was unsuccessful in doing so. He thereafter rejoined his ship and was gone from the State of Louisiana from May 18, 1965 until April 1, 1966, on which date he returned to New Orleans on leave and obtained a divorce from Charlene Bland by default. During this leave plaintiff learned that his wife had given birth to a male child on June 6, 1965, which she had named Rodney Christopher Feltus. This was the first knowledge plaintiff had that a child had been born since this was the first time he had returned to New Orleans since May 1965. He filed this petition for disavowal on April 21, 1966. Plaintiff thereafter returned to duty aboard the USS Constellation and remained so assigned until his discharge from active duty on December 16, 1966. The suit for disavowal was heard on April 21, 1967. Charlene Bland did not testify in the case nor was she present in Court at any time during the trial.
The child having been born on June 6, 1965, it must have been conceived sometime during the period between August 8, 1964 and December 7, 1964, being the period between the 300th day and the 180th day prior to birth (see Lambert v. Lambert, La. App., 164 So.2d 661). As we have seen plaintiff left the United States on board the USS Constellation on May 5, 1964 and did not return to the United States until February 1, 1965.
There is no showing in the record that Charlene Bland ever visited her husband and the proof is overwhelming that during this entire period from May 5, 1964 to February 1, 1965, while he was on foreign duty, "the remoteness of the husband from the wife has been such that cohabitation has been physically impossible."
*390 We are of the opinion that plaintiff has fully overcome the presumption of paternity set forth in LSA-C.C. Art. 184 and that he is not the father of the child born to Charlene Bland on June 6, 1965.

(b)
LSA-C.C. Art. 191 reads as follows:
"Art. 191. In all cases above enumerated where the presumption of paternity ceases, the father, if he intends to dispute the legitimacy of the child, must do it within one month, if he be in the place where the child is born, or within two months after his return, if he be absent at that time, or within two months after the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making any objection to the legitimacy of such child."
It is obvious that prescription under this article runs from date of birth of the child (in the absence of concealment thereof) and not from the date the husband may have acquired knowledge of his wife's pregnancy. Pregnancy does not always result in the birth of a viable child.
The fact that plaintiff acquired knowledge of his wife's pregnancy is immaterial. The material facts are that the child was born in New Orleans on June 6, 1965 and that plaintiff was not in New Orleans when the child was born but had returned to his ship on May 18, 1965 at the expiration of his leave. He did not again return to New Orleans until April 1, 1966. This suit was filed on April 21, 1966 within two months after his return. In our opinion the suit was timely filed.
We know of no provision in the law or in the jurisprudence which requires as a prerequisite to a suit for disavowal of parternity that an absent husband return to the place where the child was born within any given time following the date of its birth, even if he has knowledge of such birth. The only provision made by Article 191 is that the suit be filed within two months after the husband returns to the place where the child was born. Prescriptive statutes are to be strictly construed. (See United Carbon Company v. Mississippi Fuel Corp., 230 La. 709, 89 So.2d 209).
For the foregoing reasons the judgment appealed from is affirmed; costs of both Courts to be borne by the appellant, Charlene Bland.
Affirmed.