11KIMBALL, Justice,
dissenting.
I dissent because the majority proceeds to a discussion of laches without first determining both the validity of the avowal action and the categories of persons who are allowed to bring this action, which are issues that this *880 court has never squarely addressed. I consider such a discussion wholly appropriate to the instant case, as there is no codal or statutory authority for the avowal action. Rather, this action is a creation of the lower courts. I also conclude that, even assuming arguendo that such an action exists, a careful examination of the law and the history of the law in this area shows that the intervenor in this suit lacks standing to bring this action.[1]
Although “[t]he husband of the mother is presumed to be the father of all children born or conceived during the marriage,” the Code expressly grants standing to rebut this presumption to three parties. La. Civ.Code art. 184. The husband himself has standing to disavow his paternity, but to do so he must put on evidence of facts that show by a preponderance of the evidence that he is not the father. La. Civ.Code art. 187. Absent extraordinary circumstances that prevent him from filing the disavowal, he must bring this action within one hundred and eighty days after he learns or should have learned of the birth. La. Civ.Code art. 189.
The Article 184 presumption is one of the oldest and strongest presumptions found in Louisiana law. See Smith v. Cole, 553 So.2d 847, 850 (La.1989) (noting that the Article 184 presumption is “the strongest known in law”). Its precursor may be found in Article 312 of the RCode Napoleon of 1804, which provided that “[a]n infant conceived during marriage claims the husband as his father.” As Planiol noted, French law gave standing to dispute the husband’s paternity only to the husband himself and his heirs, even though the mother, the child, and other children legitimately born of the marriage may also have an interest in disproving the husband’s paternity. 1 Planiol, Traite Elementaire de Droit Civil § 1422 (Louisiana State Law Institute English Translation 1959). Absent a concealed or premature birth or legal separation of the spouses, the French presumption was also very strong. Id. at § 1430, 1439.
The presumption was first manifested in Louisiana law in Article 7 of Chapter II of Title VII of the 1808 Digest of the Civil Law, which read “[t]he law considers the husband of the mother as the father of all children conceived during the marriage.” Title VII, Chapter II, art. 7, Civil Laws of the Treaty of Orleans (1808). However, when the presumption was in force, the Digest gave no one, not even the husband himself, standing to rebut this presumption. “The law admits neither the exception of the wife’s adultery nor the allegation of the husband’s natural or accidental impotency.” Id.
The presumption of paternity in the Code of 1825 was no less exacting than that of the Code of 1808. Article 203 of the 1825 Code was a verbatim copy of Article 7 of Chapter II of Title VII of the Digest. The spirit of the second paragraph of former Article 7 of the Digest was seen in Article 204, which provided “[t]he husband cannot by alledging [sic] his natural impotence disown the child, he cannot diswon [sic] it even for cause of adultery, unless its birth has been concealed from him, in which ease he will be permitted to prove that he is not its father.” Thus, the Digest denied the husband standing to rebut the presumption even if he was impotent or if the child was the result of an adulterous affair.
However, the husband was granted standing in cases where the child’s birth had been hidden from him. Article 204 of the 1825 Code provided that “... he cannot diswon [sic] it even in case of adultery, unless its birth has been concealed from him, in which case he will be permitted to prove that he is not its father.” As noted by Planiol, the very fact that the birth was hidden attests to the child not being the husband’s. 1 Planiol, Traite Elementaire de Droit Civil § 1436 (Louisiana State Law Institute English Translation 1959). Thus, although the husband was granted standing to challenge the presumption of paternity, the standing was limited to the onejgsituation in which it was virtually certain that the child was not his.
In the Code of 1870, the presumption was continued in Article 184, which was a verbatim copy of Article 203 of the 1825 Code. Thus, the husband of the mother was still *881 considered the father of all children conceived during the marriage. La. Civ.Code art. 184 (1870). Further, Article 185 of the 1870 Code still denied the husband standing to disavow the paternity of the child even on account of impotence or adultery, unless the adulterous birth was concealed from him. La. Civ.Code art. 185 (1870).
The presumption and its attendant disavowal provision remained unchanged until 1976. Prior to the revision, disavowal of children was exceedingly rare, and there was a paucity of cases in which a husband successfully disavowed a child.[2]
The 1976 revisions to the Civil Code radically changed both the application of the presumption of paternity and the standing to rebut that presumption. Article 184 now provides that children both born and conceived during the marriage are presumed to be the children of the mother’s husband. La. Civ.Code art. 184. Further, the husband of the mother now has standing to rebut the presumption of paternity; this is accomplished simply by “prov[ing] by a preponderance of the evidence, facts which reasonably indicate that he is not the father.” La. Civ. Code art. 187. Both the article and the jurisprudence stress that the father must prove «facts; a husband who merely alleges that he was not intimate with the mother at the time of conception will not succeed in a disavowal action. See La. Civ.Code art. 187; Mock v. Mock, 411 So.2d 1063 (La.1982) (holding that husband whose only evidence in disavowal action was his own self-serving testimony of lack of sexual relations with mother could not disavow child). Further, |4absent truly extraordinary circumstances that physically prevent the husband from filing, he has only one hundred and eighty days from the time he learns or should have learned of the birth to bring the disavowal action. La. Civ.Code art. 189. If the husband dies within the one hundred and eighty days, his heirs or legatees have one year from either his death or the birth of the child, whichever is longer, to bring the action. Thus, the husband himself now has standing to rebut the presumption of his paternity in all circumstances in which the child is not his, but, in most cases, he must bring the action within one hundred and eighty days of the child’s birth or he is forever barred from doing so.
In another relatively recent innovation, the child also has standing to challenge the presumption of paternity. Article 209 provides in pertinent part that “[a] child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation.” This article, which was revised in 1980 and interpreted by this court in 1985, gives a child standing to bring a proceeding to filiate himself to his biological father despite the existence of a presumptive father. Griffin v. Succession of Branch, 479 So.2d 324 (La.1985). However, the Article 209 filiation proceeding does not illegitimate the child. Rather, the child is seen as having both a legal and a biological father and thus enjoys dual paternity. Smith v. Cole, 553 So.2d 847 (La.1989). Finally, La. R.S. 46:236.1(F) gives standing to the Department of Social Services to rebut the presumption of paternity. This statute allows the DSS to prove the biological paternity of a child, including a child that has a presumed father, solely for the purposes of acquiring support for the child. See State Through Department of Health and Human Resources v. Hinton, 515 So.2d 566 (La.App. 1 Cir.1987) *882 (holding that the Department could bring filiation proceedings to establish the true paternity of the child for the purposes of obtaining support); La. Atty. Gen. Op. No. 77-361 (noting that the state may seek a determination of paternity and child support from the biological father of a child who has a presumed father).
Thus, the Article 189 disavowal, the Article 209 filiation, and the La. R.S. 46:236.1 determination of paternity are the only three instances in which standing is given to an individual to challenge the legal relationship between a presumed father and his child. Although the mother may bring a filiation action on behalf of her child, she has no independent standing to challenge |5the presumption of her husband’s paternity. Considering that the La. R.S. 46:236.1 action is available only for the limited purpose of obtaining support for the child and does not give the biological father any parental rights, the father and child themselves are the only ones whom the Code truly allows to challenge the presumed father-child relationship.
In my view, this statutory scheme clearly denies standing to P.W. Given both the long history of protecting both the relationship between the presumed father and the child and the strict guidelines that still control who may challenge the presumption of paternity and when it may be challenged, it is apparent that the Code and its redactors affirmatively chose to deny standing to one in P.W.’s situation.
Moreover, by granting standing only to certain parties and withholding it from others, these codal and statutory laws support several important public policy considerations of the state of Louisiana. First and foremost, these laws protect and strengthen the marital family unit by protecting it from intrusion by biological fathers who have not previously established parental relationships with their children.[3] Second, these laws also protect children by promoting stable family relationships. Finally, these laws protect the substantial and important relationship that develops between a father and child by virtue of the father’s care and nurturance of the child, despite the lack of a biological connection.[4]
The evidence in this case illustrates how denying standing to P.W. will uphold these policies. The record shows that C.M. has, as the trial court noted, an especially close and strong bond with M.M.M. Further, although M.M.M. and T.D. were awarded joint custody of C.M., M.M.M. desired and several times moved for sole custody of the child. Tellingly, M.M.M. moved for sole custody of C.M. soon after P.W. filed his avowal aetion and the results of the DNA test became known, thereby illustrating the strength of the father-son bond between C.M. and M.M.M. In my view, the Code clearly provides, and the legislature intended, that this father4sonfi relationship be allowed to continue without interference from P.W. Accordingly, I respectfully dissent.

. In my opinion, the common law doctrine of laches does not belong in Louisiana’s system of civil law. This doctrine has no statutory basis in Louisiana, nor do I believe it should be allowed to creep into this state’s jurisprudence.

. See Kaufman v. Kaufman, 146 So.2d 199 (La. App.4 Cir.1962) and Singley v. Singley, 140 So.2d 546 (La.App. 1 Cir.1962). Although these cases did allow disavowal, they both involved children born more than three hundred days after a judgment of separation, and Article 187 of the 1870 Code (and Article 206 of the 1825 Code) expressly provided that the presumption did not apply to children born more than three hundred days after a separation. Thus, although Kaufman and Singley were disavowal actions, they did not actually deal with a rebuttal of the presumption of paternity.
See also Feltus v. Bland, 210 So.2d 388 (La. App. 4 Cir.1968). The disavowal in Feltus was allowed under Article 189, which provided that the presumption did not arise when the physical remoteness of the spouses made cohabitation impossible, as the husband was in the Navy and his ship was stationed in the far east (i.e., Pearl Harbor, Subic Bay, Hong Kong, and Yokusaka) at the time of conception. Again, this disavowal involved a situation where the presumption did not arise.

. See Griffin v. Succession of Branch, 479 So.2d 324, 328 (La.1985) (noting that "the public policy of this state as embodied in several section[s] of our Civil Code is to protect the family unit and the marital relationship”).

. As noted by Justice Stewart in his dissent in Caban v. Mohammed, 441 U.S. 380, 397, 99 S.Ct. 1760, 1770, 60 L.Ed.2d 297 (1979) "[p]arental rights do not spring full-blown from the biological connection between the parent and child. They require relationships more enduring.” The relationship between the presumed father and the child in this case is a prime example of a "relationship more enduring" that deserves protection.